Katherine J. Hanes v. Commissioner.
Hanes v. Commissioner
Docket No. 105354.
United States Tax Court
1943 Tax Ct. Memo LEXIS 442; 1 T.C.M. (CCH) 634; T.C.M. (RIA) 43097; February 18, 1943
*442 H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., for the petitioner. E. L. Corbin, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in income tax for the year 1936 in the amount of $4,883.58. Petitioner claims that there is no deficiency and that she has overpaid taxes for 1936. The only question is the correct amount of the cost basis of 750 shares of Class B stock of Reynolds Tobacco Company which petitioner sold in 1936. The facts have been stipulated. Findings of Fact Petitioner resides in Winston-Salem, North Carolina. She made her return on the cash basis. Her return was filed with the collector for the district of North Carolina. Petitioner received in 1920, as a gift from her father, 4,250 shares of Class B common stock of the R. J. Reynolds Tobacco Company. The stock had a basis of $10 per share in 1936 for income tax purposes. In 1928 petitioner purchased, on margin, 1,000 shares of the Class B stock through Stein Bros. & Royce, and on January 31, 1929, the 1,000 shares were exchanged for new $10 par value shares. The exchange was on the basis of 2 1/2 shares for one so that, after *443 the exchange, petitioner owned 2,500 shares in place of the original 1,000 shares. The exchange, per broker's books, was as of February 11, 1929. The date of purchase and the cost are as follows: Shares
Original
Received
Date of
Shares
Under
Purchase
Purchased
Exchange
Cost
1/12/28
400
1,000
$ 63,300.00
1/17/28
300
750
47,775.00
2/16/28
300
750
45,075.00
1,000
2,500
$156,150.00
During 1929 petitioner purchased 400 shares of the Class B stock through Fenner & Beane, brokers, and these shares were deposited as collateral with Stein Bros. & Boyce in petitioner's account on October 29, 1929. The dates of purchase and cost were as follows: Date of
Number of
Purchase
Shares
Cost
7/22/29
100
$ 5,542.50
8/8/29
100
5,392.50
8/26/29
100
5,442.50
10/3/29
100
5,392.50
400
$21,770.00
On November 1, 1929, petitioner was "long" 7,150 shares of the class B stock, par value $10 per share, with Stein Bros. & Boyce. The above total of 7,150 comprised the 4,250 shares which petitioner had received as a gift from her father in 1920, the 2,500 shares purchased in 1928, and the 400 shares purchased in 1929. The total number of shares which *444 petitioner had purchased was 2,900 shares. On November 6, 1929, the brokers transferred 1,900 shares of the collateral stock to street certificates, of which the 400 shares bought through Fenner & Beane were a part. On November 15, 1929, the brokers transferred 3,750 shares into street certificates, after which none of the shares in petitioner's account with Stein Bros. & Boyce were in her name. In 1929 petitioner sold 2,600 shares of the 7,150 shares of which petitioner was "long" with Stein Bros. & Boyce, as follows: Date of Sale
Number of Shares
11/8/29
2,000
12/2/29
600
2,600
In 1932 petitioner sold stock out of her Stein Bros. & Boyce account, as follows: Date of Sale
Number of Shares
4/13/32
2,300
Stein Bros. & Boyce delivered stock to petitioner as follows: Date of Delivery
Number of Shares
1/22/32
1,500
4/22/32
750
2,250
In summary, out of the 7,150 shares, petitioner sold 4,900 shares in 1929 and 1932 and received in 1932, 2,250 shares. Also, in 1928 and 1929, petitioner acquired through purchase and exchange, 2900 shares at a total cost of $177,920. The petitioner had received 750 shares of the stock in question on April 22, *445 1932. She sold that stock in 100 share lots during the taxable year, 1936, on February 7th, February 27th, March 18th, March 31st, May 4th, May 25th, and June 18th. On August 12th she sold the remaining 50 shares. All sales were made through E. A. Pierce & Co. The aggregate sale price was $40,721.64. In her income tax return for 1929, petitioner reported sales of 3,200 shares of the Class B Reynolds Tobacco stock. The sales reported included the two sales on November 8th and December 2nd, 1929, of 2,000 and 600 shares, respectively, which have been set forth above. There was another sale reported, a sale of 600 shares of $10 par stock on October 7, 1939, for $35,892.60. The aggregate of sales prices received for the 3,200 shares sold was $163,667.20. Petitioner reported a loss of $30,292.80. She was allowed the loss which she computed without any change on the part of the Commissioner. The statute of limitations has run against the assessment and collection of any deficiency for the year 1929. She computed the loss in the above amount by allocating to the 3,200 shares which were sold a cost basis of $193,960, as follows: 1928 Cost
Jan. 12
400 sh.
R.J.R. $25 par
$ 63,300.00
17
300 sh.
R.J.R.
25 par
47,775.00
Feb. 16
300 sh.
R.J.R.
25 par
45,075.00
1,000 $25 par
$156,150.00
Changed to: 2,500 sh. $10 par
1929
July 19 Bot.
100 sh.
R.J.R. $10 par
$ 5,542.50
Oct. 3 Bot.
600 sh.
R.J.R.
10 par
32,267.50
$ 37,810.00
Total
$193,960.00
*446 In her income tax return for 1932, petitioner reported the sales of 2,300 shares of the Class B stock. She reported a net gain of $50,666.20, being the difference between a total sales price received of $73,666.20 and a total cost of $23,000 which represented $10 a share. Respondent has determined that the cost basis of the 750 shares which petitioner sold in 1936 is $10 per share, or $7,500; that the profit realized was therefore $33,221.64 (the difference between $40,721.64 selling price and $7,500 cost basis); and that 30 percent of the gain to be recognized is $9,966.49 under section 117 of the Revenue Act of 1936. Respondent added $9,966.49 to petitioner's income in determining the deficiency. Opinion Petitioner contends that she sustained a loss from the sale in 1936 of the 750 shares of Class B Reynolds Tobacco stock in the amount of $6,913.36. She contends that the cost basis of the stock is $47,635 which represents an allocation of cost of shares which were purchased on January 12th and January 17th of 1928 under petitioner's special view of the correct application of the "first-in, first-out" rule. By using such cost basis, petitioner arrived at a loss in the above amount. *447 Respondent contends that the entire, or most, of the cost of all of the stock purchased in 1928 and 1929, $177,920, was applied to the stock which petitioner sold in 1929, so that petitioner has recovered such cost, and that, consequently, the stock which was sold in 1936 takes the cost basis of the stock which petitioner had acquired by gift and which had a basis of $10 per share. Using such basis the respondent computes a gain of $33,221.64. [1]
The pleadings cover the following matters: Petitioner set forth in her petition substantially all of the facts which the parties, later, stipulated. The respondent denied the alleged facts and made affirmative allegations, among which, are allegations to the effect that, since respondent acted upon the representations which petitioner made in her 1929 return and allowed petitioner a loss deduction in that *448 year of $30,292.80 and since the statute has run against that year, petitioner is now estopped from denying the truth of those representations and cannot claim that the stock sold in 1936 was, in fact, the stock which was reported in the 1929 return as sold in 1929. We do not think it necessary to consider the estoppel question. Respondent called as a witness the revenue agent who had examined the return of petitioner for 1929, making use of the facts agreed to for purposes of this proceeding, and through this witness, in our opinion, respondent has sustained the burden of proof resting upon him by virtue of his affirmative pleading. Petitioner has not introduced evidence to refute respondent's contention that she has recovered the entire cost of the stock which she purchased in 1928 and 1929, because of the cost basis which she allocated to the stock sold in 1929. It may be that part of this matter was intended to be covered by the stipulation, as will be noted hereinafter. Furthermore, the schedule set forth in the 1929 return shows without any doubt that petitioner used up in 1929 the entire cost of the 2,500 shares acquired by purchase and exchange in 1928. That being so, petitioner's *449 contention constitutes, and involves, recovering twice the basis for 750 shares of stock, because petitioner allocates stock sold in 1936 to some of the stock purchased in 1928. Petitioner cannot do that. "The statute authorizes the recovery of basis only once." See ; , reversed on another point, , where it was pointed out that a taxpayer cannot use the same block twice in figuring his cost basis of stock sold. On the other hand, petitioner is entitled to recover tax free any part of the cost of the purchases made in 1929 which has not been recovered in earlier tax years. This point will be discussed hereinafter. The parties agree that the action taken by the broker, Stein Bros., in November of 1929, in transferring collateral stock in street names resulted in a loss of identity of collateral stock. Petitioner's block of stock which she had received by a gift, 4,250 shares, and the 400 shares she had purchased through Fenner & Beane, had been deposited with Stein Bros. as collateral. Petitioner contends *450 here that she erred in her method of reporting gain or loss from the 1929 sales and that if she had then applied "properly," according to her present view, the "first-in, first-out" rule, the first sales in 1928 would have taken the basis of the first stock acquired, or the gift stock, and upon that hypothesis the stock sold in 1929 took the basis of the gift stock, or $10 per share. We have great doubt about this view that the "first-in, first-out" rule should be applied in this way, where there is collateral in an account consisting of both gift stock and purchased stock. While it is not necessary, as is shown hereinafter, to go into the question, it is pointed out that the rule uses this language "the stock sold shall be applied against the earliest purchases" (italics added). See Regulations 94, p. 22, article 22(a)-8. Also, it is stated in Paul & Mertens Law of Federal Income Taxation, Vol. 2, p 296, par. 18.43: Where stock is delivered to a broker as collateral to secure a loan which was used to purchase and sell stock, and during the same year sales are made of a like number of shares as were purchased during the year, the stock sold will, in the absence of evidence to *451 the contrary, be considered to be the stock purchased and not the collateral stock. Petitioner has not given any explanation of what method she used in her 1929 return in reporting the loss from the 1929 sales. She appears to have applied the "first-in, first-out" rule by leaving out of account the collateral stock acquired by gift, and attributing the sales in 1929 to the first purchases which were the 1928 purchases and the first purchase in 1929. The question here is controlled by We did not permit the taxpayer there to compute gain or loss in the taxable year by applying a method in that year which took no account of what the taxpayer had done in his return for earlier years in reporting gain or loss from sales of the same class of stock. We pointed out that the various rules for allocating cost are merely rules of convenience, not rules of law in the strict sense, and that they are to serve the purpose of enabling the taxpayer to avail himself of the statutory provision which allows a taxpayer to recover his cost before becoming taxable on any gain. The rules are only a means to the end of returning to a taxpayer his capital *452 investment free from tax, and "if they have partially accomplished this result, even through what was perhaps an erroneous application of one method in a situation which more properly called for another, still we do not think it is now appropriate to apply retroactively a theoretically correct method and get an erroneous result." See p. 644 of the report.[2]
If petitioner made an erroneous application of the "first-in, first-out" rule in the 1929 return, which has not been proved, nevertheless, petitioner was allowed to recover the entire cost basis of 3,200 shares of stock tax free. That forecloses petitioner from now seeking to apply a "theoretically correct method." Furthermore, the petitioner cannot use the same basis twice or the same block twice, in figuring the cost basis of stock sold, and that would be the result of adopting petitioner's proposed *453 method in the taxable year. The basis contended for is $47,635, which comprises $22,155 for 350 shares and $25,480 for 400 shares. Those amounts are the respective costs of 350 shares bought on January 12, 1928, and 400 shares bought on January 17, 1928. Petitioner used the costs of the identical stock in the cost basis used for part of the stock sold in 1929. Upon the foregoing the result indicated is to sustain the respondent. However, in the interest of fully and accurately disposing of the question in complete fairness to petitioner, it may be advisable to permit the parties to clear up a matter left in doubt, provided only that no new issue is raised, that only a fact is involved, and that the fact can be proved under a stipulation of the parties, to be submitted hereafter. It appears that the parties may have believed that they had covered this matter in the stipulation which has been filed. Otherwise, the matter could not now be remedied after submission of the case. Respondent takes the position that the entire cost of the 1928 and 1929 purchases, in the amount of $177,920 was recovered in 1929 under petitioner's allocation of cost to stock sold in 1929. However, the schedule *454 attached to the 1929 return identifies only the cost of 2,500 shares purchased in 1928, $156,150, and the cost of 100 shares purchased in July of 1929, $5,542.50, as having been allocated to 2,600 shares of stock sold in 1929, out of a total of 3,200 shares sold in 1929. Furthermore, the parties have stipulated that out of the total number of shares held by Stein Bros., 7,150, 2,600 shares were sold in 1929. Taking both of these factors into consideration, we are left in doubt about the remaining 600 shares which were sold in 1929. In the return for 1929, the cost basis allocated to 600 shares sold is $32,267.50. That cost may or may not include 300 shares purchased in 1929, in August and October, through Fenner & Beane at a cost of $16,227.50. The parties have stipulated that, in reporting gain in 1932 from sales of 2,300 shares, petitioner used a cost basis of $10 per share. It may be that the parties understand between them more about the unaccounted 600 shares sold in 1929, than their stipulation reveals, and that such understanding provides the reason for the stipulation that 2,600 shares sold in 1929 were out of the total shares "long" in the Stein Bros. account. Perhaps those *455 600 shares were identifiable and identified, and had nothing to do with any of the total lot of 7,150 shares in the Stein Bros. account, which constitute the total number of shares owned by petitioner that we are told to consider in this proceeding, exclusive of any other Class B $10 par value Reynolds Tobacco stock owned by petitioner. If petitioner, in fact, has not previously recovered tax free the cost of 300 shares purchased in 1929 after July of 1929 at a cost of $16,227.50, it would appear to be proper to allocate the sale of 300 shares in 1936 to those 300 shares purchased in 1929, and to use up in 1936 the unrecovered cost of $16,227.50. But the parties must make a further stipulation of facts if that result is to be reached. And if the above amount has not been recovered, then, to allow recovery in 1936 seems to be in accord with the respondent's application of the "first-in, first-out" rule, under which sales are attributed to the first purchases, first, rather than to stock first acquired and first put into the account as collateral. We are inclined to regard that view of the rule as correct. Petitioner's argument on the law does not cover this point and no *456 authority that we can find indicates that sales are to be allocated to stock first acquired, where acquisition is by gift, as distinguished from stock first purchased, where there has been a commingling and loss of identity of stock purchased and stock acquired by gift, both having been deposited as collateral. If the petitioner shows that 300 shares sold in 1936 take the basis of the last 300 shares bought in 1929, or $16,227.50, the total cost basis of the 750 shares sold in 1936 will be $20,727.50, ($4,500 being the cost basis for 450 shares) and petitioner's gain will be $19,994.14, instead of $33,221.64, and the deficiency will be less than respondent has determined. It is held that respondent's determination is sustained, subject to a possible recomputation of the amount of the gain realized. Decision will be entered under Rule 50. Footnotes
1. Respondent took 30 percent of the gain of $33,221.64, under section 117 of the Revenue Act of 1936, or $9,966.49 and added that amount to the taxable income. The return for 1936 is not in evidence, and so the record does not show how petitioner treated this item in her 1936 return, if, indeed, she reported the sales in the return.↩
2. In the Walker ↩ case the application of the taxpayer's proposal would have left him in 1930 with a larger basis than actually remained to him in view of the amount of the basis used in computing gains on earlier sales. That would be true here. We have not traced out every step to show this in the interest of brevity.